

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Junta de Planificación De Puerto Rico; y Plaza Santa Isabel, Inc., a través del Ingeniero Germán Torres<br><br>        Recurridos<br><br>            v.<br><br>A. Cordero Badillo, Inc.; Mil, Inc.; Y Ponce Cash & Carry, Inc.<br><br>        Peticionarios | Certiorari<br><br>2009 TSPR 160<br><br>177 DPR ____ |

Número del Caso: CC-2005-1167


Fecha: 14 de octubre de 2009


Tribunal de Apelaciones:

        Región Judicial I, Panel IV San Juan


Juez Ponente:
                Hon. Gilberto Gierbolini Rodríguez


Abogados de la Parte Peticionaria:

                Lcdo. Carlos M. Rivera Vicente
                Lcdo. Carlos A. González Soler


Abogados de la parte Recurrida:

                Lcda. Aida del C. Silver Cintrón
                Lcdo. Juan J. Hernández López de Victoria


Materia: Revisión Administrativa procedente de la J    unta de Planificación


Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correccione    s del proceso de compilación y publicación oficial de las decisio    nes del Tribunal. Su distribución electrónica se hace como    un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Junta de Planificación de Puerto
Rico; y Plaza Santa Isabel, Inc.

     Recurridos

         v.

                              CC-2005-1167

A. Cordero Badillo, Inc.; Mil,
Inc.; y Ponce Cash & Carry, Inc.

     Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, 14 de octubre de 2009.

Las peticionarias, A. Cordero Badillo, Inc. (ACB), Mil, Inc. (Mil) y Ponce Cash & Carry, Inc. (PCC), nos solicitan la revocación de una sentencia emitida por el Tribunal de Apelaciones. En dicha sentencia, el foro apelativo intermedio confirmó una resolución emitida por la Junta de Planificación de Puerto Rico (Junta de Planificación). Confirmamos esa decisión y aclaramos a quiénes se les considera "partes" en el procedimiento administrativo.

I

El 24 de julio de 1998, D'Alessio Construction, Inc. presentó a la consideración de la Junta de Planificación la consulta número 98-67-0171-JPU para la ubicación de un proyecto comercial, en una finca con cabida de 21.08 cuerdas en el Municipio de Santa Isabel. El 23 de octubre de 1998, la Junta de Planificación emitió una resolución determinando la necesidad de recibir los comentarios de diversas agencias y llevar a cabo una audiencia pública para escuchar los planteamientos de cualquier parte con interés sobre el proyecto.

El 15 de diciembre de 1998, la Junta de Planificación celebró una vista pública en el salón de asambleas de la Casa Alcaldía del Municipio de Santa Isabel. A dicha vista pública, por medio de su representación legal, comparecieron Mil y PCC. Al igual que Mil y PCC, varias agencias públicas, corporaciones públicas y privadas, así como personas particulares, acudieron a la vista pública.

En dicha vista, la representación legal de Mil y PCC solicitó que se les concediera un término de diez (10) días para someter una ponencia escrita en oposición al proyecto. Dicho escrito fue presentado el 28 de diciembre de 1998. El escrito titulado "Comparecencia de los Interventores" expresó, sin más, que éstas solicitaron en la vista pública que fueran consideradas como partes interventoras. El escrito expuso varias razones para denegar la autorización del proyecto pero no fundamentó

las razones para conceder la intervención. Apéndice del recurso, págs. 90-91.

El 10 de febrero de 1999, la Junta de Planificación aprobó la consulta solicitada e hizo alusión al escrito presentado por Mil y PCC. Determinó para entonces, que la consulta propuesta estaba en armonía con los objetivos y políticas públicas del Plan de Usos y Terrenos de Puerto Rico. La Junta de Planificación estableció una serie de condiciones para la aprobación del proyecto comercial y definió la propuesta de 100,000 pies cuadrados como sigue:

a) Edificio comercial de 60,000 pies cuadrados para establecer un supermercado de 31,500 pies cuadrados; una mueblería de 20,000 pies cuadrados y una farmacia de 8,500 pies cuadrados.

b) Edificio independiente para ocho (8) salas de teatro con capacidad para 250 personas cada una, área de ventas de boletos y golosinas, con un área total de 20,000 pies cuadrados.

c) Cuatro (4) estructuras independientes de 5,000 pies cuadrados, tres de las cuales serán para restaurantes de comida rápida con su correspondiente servicarro y una será para un banco, también con su auto servicio. [Apéndice del alegato en oposición, pág. 19.]

En dicha resolución, se informó el derecho de cualquier parte afectada por la decisión para solicitar reconsideración de la decisión ante la Junta de Planificación y la posterior revisión judicial, con sus respectivos términos. La Junta de Planificación notificó esta decisión a diversas agencias y corporaciones públicas, a los invitados a la vista pública (colindantes, agencias y funcionarios públicos) y a los que comparecieron a ella. Surge del expediente que Mil y PCC

fueron notificadas de la resolución. Apéndice del alegato en oposición, págs. 28-32 y 64. Ninguna parte solicitó reconsideración o revisión judicial de la resolución emitida por la Junta de Planificación.

El 27 de abril de 1999, D'Alessio Construction, Inc. solicitó la primera enmienda a la consulta autorizada. El 7 de mayo de 1999, la Junta de Planificación emitió una resolución en la que aprobó cambios a la autorización original y le añadió una nueva condición. La consulta enmendada describió los cambios al proyecto consultado como sigue: primero, redujo el área del supermercado a 25,000 pies cuadrados, ubicó la farmacia en un edificio independiente, y utilizó el sobrante para una mueblería y otros locales; y segundo, dividió uno de los locales que originalmente fue propuesto como restaurante de comida rápida en dos locales para el mismo uso. Del expediente no surge que esta resolución fuera notificada a Mil y PCC.

El 12 de mayo de 2000, se solicitó una segunda enmienda a la consulta aprobada. En dicha solicitud de enmienda se adicionaron al proyecto tres (3) cuerdas de terreno y se añadió una estructura de 40,000 pies cuadrados para comercio al detal con una segunda planta de 20,000 pies cuadrados para alquiler de oficinas. En dicha enmienda se destinó un área de estacionamiento mayor a la requerida por la reglamentación. El 8 de junio de 2000, la Junta de Planificación dejó en suspenso la consulta para dar paso a una evaluación más profunda. Dicha resolución fue notificada por instrucción específica como "copia de

cortesía a todas las personas cuyos nombres y direcciones obran en el expediente". Apéndice del alegato en oposición, pág. 97. En el certificado de notificación que obra en el expediente administrativo se señaló que esta resolución fue notificada, entre otros, a los "colindantes y vecinos" y a las "personas que asistieron a la Vista Pública". Apéndice del alegato en oposición, pág. 98. Además, esta vista fue anunciada mediante aviso en un periódico de circulación general el día 12 de septiembre de 2000. Apéndice del alegato en oposición, pág. 149.

A estos efectos, el 27 de septiembre de 2000, la Junta de Planificación celebró una vista pública. A esta vista ninguna de las peticionarias acudió. El 30 de noviembre de 2000, la Junta de Planificación aprobó por resolución las enmiendas solicitadas, con las condiciones requeridas por las agencias pertinentes del gobierno. Surge de la resolución de la Junta de Planificación que no se generó oposición a la enmienda solicitada. Para entonces, la consulta aprobada contemplaba un proyecto comercial de 160,000 pies cuadrados. Esta resolución fue notificada a Mil y PCC. Apéndice del alegato en oposición, pág. 170.

El 8 de marzo de 2001, la Junta de Planificación aprobó una tercera solicitud de enmienda para redistribuir los 20,000 pies cuadrados destinados a oficinas en la segunda enmienda. Ahora este espacio sería destinado a la venta de servicios, piezas y mecánica liviana de vehículos de motor. Estos servicios se prestarían en una estructura

independiente. Esta tercera enmienda aprobada por la Junta de Planificación fue notificada mediante copia de cortesía a Mil y PCC. Apéndice del alegato en oposición, págs. 212 y 215.

Posteriormente, el 7 de noviembre de 2003, se solicitó una cuarta enmienda al proyecto. La enmienda consistía en redistribuir el uso destinado a las facilidades anteriormente aprobadas. A estos efectos, se propuso sobre el área de 100,000 pies cuadrados aún no construidos: que 80,277 pies cuadrados se utilicen para expandir el área destinada para el supermercado, 6,000 pies cuadrados para tres restaurantes de comida rápida y los restantes 15,344 pies cuadrados para el negocio de mantenimiento y venta de piezas para autos. Para esta fecha, el proyecto contaba con alrededor de 60,000 pies cuadrados ya construidos. El 5 de diciembre de 2003, la Junta de Planificación aprobó la enmienda solicitada, con una serie de condiciones para cumplir con la reglamentación aplicable.

Entonces, el 4 de febrero de 2004, ACB, Mil y PCC, por conducto de una nueva representación legal (en el caso de Mil y PCC), presentaron una moción de reconsideración ante la Junta de Planificación. Esta comparecencia fue la primera intervención de ACB en el proceso ante la Junta de Planificación. La moción se tituló "Moción de Reconsideración, Intervención, Oposición, Revocación y Desestimación de Consulta de Ubicación". Apéndice del recurso, pág. 93. En esta moción, las peticionarias

alegaron que la resolución no le fue notificada a Mil y PCC a pesar de "haber comparecido como interventores durante el proceso". Además, se cuestionó la procedencia de la aprobación a la cuarta enmienda (en relación al supermercado). Las peticionarias ACB, Mil y PCC arguyeron que la cuarta enmienda debió solicitarse como una nueva consulta de ubicación y que la consulta original no tenía vigencia.

El 19 de mayo de 2004, la Junta de Planificación atendió las oposiciones a la aprobación de la cuarta enmienda (entre las cuales se encontraba la de las peticionarias). En su resolución, la Junta de Planificación aprobó la solicitud de intervención de las peticionarias y declaró no ha lugar la reconsideración. La resolución fue notificada a las peticionarias ACB, Mil y PCC, así como a otros interesados, que igualmente fueron declarados interventores en la resolución que atendió la reconsideración. Apéndice del alegato en oposición, págs. 261, 263 y 268.

Las peticionarias ACB, Mil y PCC acudieron al Tribunal de Apelaciones y el 21 de octubre de 2005, ese foro confirmó la resolución recurrida. Inconformes con esta decisión, ACB, Mil y PCC acuden ante nos y solicitan su revocación. Al presente, el proyecto impugnado se encuentra operando bajo el nombre de Plaza Santa Isabel.

En síntesis, las peticionarias alegan que: (1) se le ha violado su derecho a un debido proceso de ley pues ni la Junta de Planificación ni el proponente, le notificaron

sus solicitudes de enmiendas y resoluciones respectivamente, cuestión imprescindible por su calidad de interventor; (2) no procedía la aprobación de la cuarta enmienda porque faltaba información necesaria para concederla; (3) la consulta de ubicación aprobada había caducado para la fecha de la solicitud de la cuarta enmienda; (4) por lo tanto, la cuarta enmienda debía ser tramitada en un proceso de consulta nueva; y (5) la resolución en la que se aprobó la cuarta enmienda está incompleta.

Expedido el auto de *certiorari* y con el beneficio de la comparecencia de las peticionarias (ACB, Mil y PCC), de la Junta de Planificación y de Plaza Santa Isabel, procedemos a resolver el recurso.

## II-A

La Ley de Procedimiento Administrativo Uniforme (L.P.A.U.) contiene un cuerpo de reglas para conducir el comportamiento de las agencias no exceptuadas por dicha ley. Ley Núm. 170 de 12 de agosto de 1988, sec. 1.2, 3 L.P.R.A. sec. 2101, *et seq.*; Rivera v. Morales, 149 D.P.R. 672 (1999).

En el contexto de la revisión judicial de una determinación administrativa, "los tribunales tenemos el deber de fiscalizar rigurosamente las decisiones de dichas agencias, para asegurar que desempeñen cabalmente sus importantísimas funciones, y para que el País no pierda la fe en sus instituciones de gobierno". Empresas Ferrer v. A.R.Pe., Op. de 2 de octubre de 2007, 2007 T.S.P.R. 175,

2007 J.T.S. 181, 172 D.P.R. __ (2007); Municipio de San Juan v. J.C.A., 152 D.P.R. 673, 700 (2000). Ahora bien, las decisiones que emiten las agencias de gobierno merecen una amplia deferencia y respeto, ya que éstas poseen vasta experiencia y conocimiento especializado sobre los asuntos que por ley se les ha delegado.

Según la L.P.A.U., las determinaciones de hechos de una agencia se sostendrán si se basan en evidencia sustancial que obre en el expediente administrativo. Sec. 4.5, *supra*, sec. 2175. Procede revocar una determinación de hecho de una agencia sólo cuando resulte irrazonable o cuando se actuó de forma arbitraria o ilegal. Fuertes y otros v. A.R.Pe., 134 D.P.R. 947 (1993). A estos fines, evidencia sustancial es aquella relevante que una mente razonada podría entender adecuada para sostener una conclusión. Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004). Por lo tanto, una decisión administrativa goza de una presunción de legalidad y corrección que debe respetarse mientras la parte que las impugna no demuestre con suficiente evidencia que la decisión no está justificada. *Id.*; Henríquez v. Consejo Educación Superior, 120 D.P.R. 194 (1987).

Por otra parte, las conclusiones de derecho serán revisadas en todos sus aspectos. Sec. 4.5. *supra*; Padín Medina v. Adm. Sist. de Retiro, Op. de 2 de agosto de 2007, 2007 T.S.P.R. 146, 2007 J.T.S. 151, 172 D.P.R. __ (2007). No obstante, los tribunales no pueden descartar libremente las conclusiones e interpretaciones de la

agencia. Martínez v. Rosado, 165 D.P.R. 582 (2005). Igualmente, merece gran deferencia y respeto la interpretación razonable de un estatuto que hace el organismo que lo administra y del cual es responsable. *Ibíd*. Aun en casos dudosos en que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial. De Jesús v. Depto. Servicios Sociales, 123 D.P.R. 407, 417-418 (1989). Esta deferencia cede cuando la decisión afecta derechos fundamentales, resulta irrazonable o conduce a la comisión de una injusticia. Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881 (1999).

B

La L.P.A.U. define el término "parte" de la siguiente manera:

> Parte.-Significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento. [Sec. 1.3(j), *supra*, sec. 2102(j).]

Esta disposición ha suscitado controversia a la hora de determinar quién es parte para efectos de notificación de la decisión administrativa o para solicitar revisión judicial. Existe un problema al definir los que pueden reclamar ser parte pero que no son promoventes o promovidos. D. Fernández Quiñones, Derecho Administrativo y la Ley de Procedimiento Administrativo Uniforme, Colombia, Ed. Forum, 2001, sec. 8.12, pág. 500. Hemos

reconocido que existen circunstancias "en las que la determinación de quién es parte en un proceso administrativo resulta una labor compleja". Rivera v. Morales, *supra*, pág. 683. El concepto "parte" incluye: (1) la persona a quien se dirige la acción; (2) la agencia a quien se dirige la acción; (3) el interventor; (4) aquél que ha presentado una petición para la revisión o cumplimiento de la orden; (5) la persona designada como tal en el procedimiento; y (6) aquél que participó activamente durante el procedimiento administrativo, y cuyos derechos y obligaciones pueden verse adversamente afectados por la acción o inacción de la agencia. Ocean View v. Reina del Mar, 161 D.P.R. 545 (2004).

Este Tribunal, consciente de la errónea aplicación del concepto de "parte" en algunas agencias, sostuvo en Junta Dir. Portofino v. P.D.C.M., Op. de 2 de abril de 2008, 2008 T.S.P.R. 54, 2008 J.T.S. 75, 173 D.P.R. ___ (2008), que no es suficiente para ser considerado "parte" que a una persona se le haya notificado de la resolución administrativa. Sigue siendo determinante la distinción entre el mero participante y el participante activo. *Ibíd.*

En ocasiones anteriores, este Tribunal ha tenido que delimitar el concepto "parte" en los casos de intervención o por participación. En ambos casos, se trata de definir quién tiene facultad para reclamar en calidad de "parte" su participación en un proceso administrativo.

La intervención "es el mecanismo procesal para que una persona que no fue parte original en un procedimiento,

pueda defenderse de la determinación administrativa". Asoc. Residentes v. Montebello Dev. Corp., 138 D.P.R. 412, 420 (1995). El interventor se define así en la L.P.A.U.:

> Interventor.–Significa aquella persona que no sea parte original en cualquier procedimiento adjudicativo que la agencia lleve a cabo y que haya demostrado su capacidad o interés en el procedimiento. [Sec. 1.3(e), *supra* sec. 2102(e)].

Una solicitud de intervención debe hacerse por escrito y debidamente fundamentada. Com. Ciudadanos Caimito v. G.P. Real Prop., Op. de 4 de junio de 2008, 2008 T.S.P.R. 105, 2008 J.T.S. 125, 174 D.P.R. ___ (2008); Rivera v. Morales, *supra*, pág. 687. En ese escrito, una persona natural o jurídica que solicita ser considerada parte interventora debe demostrar su capacidad o interés sustancial en el procedimiento.

La L.P.A.U. en lo pertinente, dispone:

Intervención–Solicitud

Cualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una **solicitud por escrito y debidamente fundamentada** para que se le permita intervenir o participar en dicho procedimiento. La agencia podrá conceder o denegar la solicitud, a su discreción, tomando en consideración entre otros los siguientes factores:

(a) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.

(b) Que no existan otros medios en derecho para que el peticionado pueda proteger adecuadamente su interés.

(c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.

(d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.

(e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.

(f) que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.

(g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.

La agencia deberá aplicar los criterios que anteceden de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención. [Sec. 3.5, *supra*, sec. 2155. (Énfasis suplido)]

La agencia tiene el deber de notificar su denegatoria a una solicitud de intervención con sus respectivos términos de revisión. Sec. 3.6, *id.*, sec. 2156. Además, la denegatoria a intervenir en un proceso administrativo es una cuestión de derecho que es revisable sin limitación por los tribunales. San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. 374 (2001).

En una vista pública para considerar una consulta de ubicación, por lo general, se permite participar a personas y entidades que desean expresarse sobre un proyecto en particular, pero esto no necesariamente les convierte en partes o interventores. Rivera v. Morales, *supra*, pág. 688. Además, hemos expresado que el hecho de que una persona o entidad remita una copia de cortesía o que la agencia notifique su resolución a determinada persona natural o jurídica, no convierte a éstas en "partes" en el proceso administrativo. Junta Dir. Portofino v. P.D.C.M., supra; Ocean View v. Reina del Mar, *supra*; Rivera v. Morales, *supra*.

Es parte quien puede demostrar el efecto adverso o menoscabo que le puede causar a sus derechos una decisión administrativa. Fernández Quiñones, op cit., págs. 142-143. No todo el que provee información sobre una consulta de ubicación "automáticamente pasa a ser `parte´ en el proceso". Lugo Rodríguez v. J.P., 150 D.P.R. 29, 42 (2000). En algunas instancias, el interés económico de un competidor podría ser base para conceder una solicitud de intervención. San Antonio Maritime v. P.R. Cement Co., supra.

En Rivera v. Morales, supra, decidimos que no tiene el carácter de interventor un participante que se limitó a solicitar el expediente administrativo y a enviar una carta expresando sus preocupaciones sobre un proyecto. Por esto, resolvimos que la agencia no tenía la obligación de notificarle su decisión a este participante como si fuera una parte. Hay diferencia entre una persona natural o jurídica que participó en el procedimiento administrativo y una parte afectada para fines de solicitar revisión judicial. El haber participado en el proceso administrativo no le asegura a esa persona legitimación para la intervención judicial. Fernández Quiñones, op cit., pág. 500. Véase además, Opinión disidente del Juez Presidente señor HERNÁNDEZ DENTON a la que se unió el Juez Asociado señor RIVERA PÉREZ en Com. Ciudadanos Caimito v. G.P. Real Prop., supra; Junta Dir. Portofino v. P.D.C.M., supra.

En <u>Lugo Rodríguez v. J.P.</u>, *supra*, pág. 43, resolvimos que "no sólo el promovente, el promovido y el interventor y aquel designado como tal se consideran `parte´ en un procedimiento administrativo." Allí determinamos que también son "partes" las personas cuyos derechos y obligaciones se pueden ver afectados por el proceso administrativo y participan activamente en los procesos ante la agencia. Ahora bien, para determinar cuál participante debe ser considerado como parte y cuál no, es preciso distinguir al participante activo del mero participante. El mero participante se limita a comparecer a la audiencia pública o declara en la misma sin mayor intervención.

En aquella ocasión, concluimos que no se consideran "parte" a los efectos de notificar copia de los recursos de revisión: (1) el mero participante; (2) el *amicus curiae*; (3) el que comparece a las vistas públicas sin mayor intervención; (4) el que declara en la vista sin demostrar ulterior interés; (5) el que se limita a suplir evidencia documental; y (6) el que no demuestra tener un interés que pueda verse adversamente afectado por la decisión administrativa. *Id.* a la pág. 44. Debido a esto, decidimos que no debía ser considerado "parte" un participante que no solicitó intervención y cuya participación se limitó a oponerse por escrito. Por otro lado, reconocimos que era "parte" otro participante que aunque no presentó una solicitud de intervención, estuvo activo en el proceso, ya que procuró defender su interés

mediante un interdicto provisional y permanente, sometió ponencias, presentó réplicas a la moción de reconsideración ante la Junta de Planificación, fue notificado de los escritos de las partes y que compareció a las audiencias públicas.

Una participación activa requiere una intervención más abarcadora. El que reclame ser "parte" debe demostrar que tiene un interés reconocido en la decisión, comparece a las vistas, y presenta oralmente y por escrito su posición; además, asume un rol activo. Lugo Rodríguez v. J.P., *supra*, págs. 43-44. Un participante activo utiliza los remedios disponibles para proteger su interés. Por lo tanto, "resultaría injusto y arbitrario no considerarlo una 'parte'." *Id.*, pág. 44. Véase además, Com. Ciudadanos Caimito v. G.P. Real Prop., *supra*.

Se encuentra firmemente establecido que una parte que interese intervenir en un proceso administrativo tiene que presentar su solicitud por escrito y fundamentada. Sin embargo, el reconocimiento de una persona natural o jurídica como "parte" en un proceso administrativo por razón de su grado de participación, ha creado confusión e incertidumbre en las agencias y en los foros judiciales. Véanse, Com. Ciudadanos Caimito v. G.P. Real Prop., *supra*; Junta Dir. Portofino v. P.D.C.M., *supra*; Residentes La Concepción v. J.P., 167 D.P.R. 486 (2006); Lugo Rodríguez v. J.P., *supra*. Esta confusión surge debido a que la doctrina de participante activo, como se implantó en el

pasado, introdujo a nuestro Derecho Administrativo figuras extrañas a nuestra ley, con fuera de contexto y de dudosa ayuda para guiar la función administrativa. Véase, W. Vázquez Irizarry, El Tribunal Supremo de Puerto Rico: Análisis del Término 2007-2008, Derecho Administrativo, 78 Rev. Jur. U.P.R. 571, 590-591 (2009). Según el Prof. William Vázquez Irizarry, no se "justifica mantener una norma subjetiva para determinar quién es parte a los efectos de notificar la decisión final y el recurso judicial". Id., pág. 599.

Por eso, es menester establecer que una persona natural o jurídica que se encuentre participando activamente en un proceso administrativo y que desee ser considerada "parte" con todo lo que ello implica para fines de revisión de la decisión administrativa, debe hacer una solicitud formal al respecto, debidamente fundamentada. Esto es, el interesado deberá hacer una solicitud formal en la que demuestre claramente cómo se verá afectado su interés por la decisión administrativa. Dicha solicitud deberá hacerse por escrito, para establecer claramente el deber de la agencia de contestarla, también por escrito. Con estos requisitos se evita la incertidumbre de quién es parte y por consiguiente, a quién hay que notificarle cualquier solicitud de revisión judicial. Sólo se le requiere la presentación de un escrito a la parte que está verdaderamente interesada. El Profesor Vázquez Irizarry sostiene que esta postura "tiene la virtud de brindar

certeza a la notificación y superar así un análisis subjetivo respecto a los niveles de participación de cada persona en el proceso". Vázquez Irizarry, *supra*, pág. 596.

Los planteamientos de que esta alternativa pudiera ser onerosa o muy formal para las partes que intervienen en un procedimiento administrativo expresan, en realidad, una inconformidad con la L.P.A.U. Requerirle al participante activo lo ya requerido por la propia L.P.A.U. al interventor no puede considerarse "un formalismo que resulta lesivo a una política de apertura de los procedimientos... [ya que] existen maneras de conciliar las mismas con las virtudes del mecanismo de intervención". *Id.,* pág. 605. "Esto se logra si la agencia actúa de forma proactiva", y no debemos arrogarnos dicha facultad pues le debemos deferencia a las otras ramas de gobierno. *Id.* Evidentemente, en nuestro sistema de gobierno la Asamblea Legislativa es la que crea y enmienda las leyes. La L.P.A.U., como fue aprobada, no contempla la figura del participante activo.

Estas expresiones son cónsonas con el marco legal de la L.P.A.U. Estos requisitos son idénticos a los que la ley exige a toda parte interventora. Sec. 3.5, *supra*, sec. 2155. De esta manera, se asegura que una persona que demuestre tener capacidad y el interés necesario pueda ser notificada oportunamente de los procedimientos de revisión de una determinación administrativa. Además, se le brinda la oportunidad a la agencia administrativa para que aplique sus conocimientos  en la determinación de qué

personas, naturales o jurídicas, deben ser consideradas como partes a estos fines. Claro está, la persona adversamente afectada con esta decisión, que reclame que se le considere como parte, puede procurar revisión judicial. Ese es el mismo trámite disponible para quienes reclamen ser interventores. Véanse, Sec. 1.3(e), *supra*, sec. 2102(e); Sec. 3.6, *supra*, sec. 2156.

No debemos olvidar que la certidumbre sobre quién debe ser considerado "parte" para la revisión judicial es esencial. La incertidumbre en este extremo es "devastadora" pues la omisión de notificar a una de las partes "priva al foro apelativo de jurisdicción y conlleva la desestimación irreversible del recurso". Vázquez Irizarry, *supra*, pág. 587. Por lo tanto, "[e]s precisamente a la luz de esta consecuencia que resulta tan importante que los criterios a base de los cuales se identifican a las partes sean claros y preferiblemente objetivos. Estamos ante un tipo de situación en que la certeza es una virtud". *Id*.

Nuestras expresiones en Junta de Dir. Portofino v. P.D.C.M., *supra*, es "sin lugar a dudas un paso de avance", pero se ha criticado que entonces "el problema no se entend[ió] a plenitud, y la solución no esclarece todo lo que requiere aclaración". Vázquez Irizarry, *supra*, *pág. 598*. En relación a la diferencia entre la participación a nivel administrativo y el concepto de "parte" para la revisión judicial, la confusión permanece, así como los problemas que  acarrea la referida distinción". *Id*., pág.

599. Por lo tanto, "no [se] justifica mantener una norma subjetiva para determinar quién es parte a los efectos de notificar la decisión final y el recurso judicial". *Id*. De hecho, el Profesor Vázquez Irizarry señala "que una posible razón para que la agencia en este caso [<u>Junta de Dir. Portofino v. P.D.C.M.</u>, <u>supra</u>] optara por notificar su decisión final a treinta y siete (37) personas, pudo haber sido precisamente una reacción a lo inmanejable de los criterios de distinción entre el mero participante y el participante activo". *Ibíd*.

La solución que hoy establecemos atiende el problema ante nos. Lo contrario sería atender una preocupación legítima en el contexto incorrecto. El asunto planteado no es la "participación ciudadana en [los] procesos administrativos pues eso nunca estuvo en disputa". *Id.*, pág. 595. El problema ante nos es cómo identificar "aquellos con el nivel de interés necesario para calificarlos como partes y reconocerlos como tales en las fases apelativas". *Ibíd.*

No nos cabe duda que la participación en un proceso administrativo es deseable y necesaria. Nadie le está cerrando las puertas a esa participación ciudadana. De lo que se trata es de no confundir "una visión liberal y progresista a favor de la participación" con un problema distinto, a saber, quién es "parte", con los efectos que esa determinación conlleva para la notificación y revisión de las decisiones administrativas. *Id.*, pág. 591. El Profesor Vázquez Irizarry concluye muy convincentemente

que la solución que adoptamos en el pasado y que ha causado confusión e incertidumbre, aunque bien intencionada, "estuvo mal concebida y no ha servido bien al proceso administrativo". *Id*, pág. 605. No obstante, las confusiones del pasado no deben ser óbice para la corrección de las normas de nuestro Derecho Administrativo. Por el contrario, es deber de este Tribunal encaminar nuestro Derecho dentro de los límites que imponen la Constitución y la ley.

Hoy resolvemos conforme con lo que dispone la Ley de Procedimiento Administrativo Uniforme. En nuestro sistema democrático de poderes separados, la facultad de formular política pública mediante la aprobación de las leyes no le corresponde a este Tribunal. "El juez es un intérprete, y no un creador". Alonso García v. S.L.G., 155 D.P.R. 91, 107 (2001), Opinión disidente del Juez Asociado señor RIVERA PÉREZ. El poder de la Rama Judicial se circunscribe a resolver casos y controversias según la Constitución y las leyes vigentes. Al ejercer esa función, ausente un choque del estatuto con la Constitución, venimos obligados a aplicar la ley aunque discrepemos personalmente de su sabiduría. En otras palabras, "los motivos que inspiren una actividad legislativa legítima no son objeto apropiado de escrutinio judicial". Córdova y otros v. Cámara de Representantes, Op. de 29 de junio de 2007, 2007 T.S.P.R. 133, 2007 J.T.S. 124 pág. 1687, 171 D.P.R. ___ (2007). Ese es el sendero democrático que la Constitución reconoce.

Hacer lo contrario sería usurpar las prerrogativas de la Rama Legislativa y establecer una tiranía judicial.

La aclaración que hoy hacemos persigue evitar confusión e incertidumbre, y busca determinar de manera objetiva quiénes son partes en el procedimiento administrativo. La informalidad que ha regido ese trámite hasta el presente permite que se cuestione la legitimación de los recurrentes y ha creado una incertidumbre respecto a quiénes hay que notificar una solicitud de revisión judicial. Véase, Lugo Rodríguez v. J.P., *supra*, Opinión disidente del Juez Asociado señor REBOLLO LÓPEZ. Ahora bien, como esa informalidad procesal ha imperado hasta el presente, los requisitos formales que ahora reconocemos aplicarán solamente de manera prospectiva.

C

Según el Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Núm. 6031 de 13 de octubre de 1999, en adelante el Reglamento, una Consulta de Ubicación se define en lo pertinente como sigue:

> Consulta de Ubicación – Es el procedimiento ante la Junta de Planificación, para que se evalúe, pase juicio y tome la determinación que estime pertinente, sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas, pero que las disposiciones reglamentarias proveen para que se consideren por la Junta de Planificación. En áreas no zonificadas, incluye propuestos usos de terrenos que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social, pudiesen

afectar, significativamente, el desarrollo de un sector… Sec. 2.07.[1]

Por su parte, el Reglamento dispone un término de caducidad para los acuerdos sobre consultas de ubicación de centros comerciales de cien mil (100,000) pies cuadrados o más:

> Centro Comercial – Conforme lo dispone la Ley 91 del 20 de junio de 1998, en los casos en que se apruebe una consulta de ubicación para la construcción de un centro comercial de cien mil (100,000) o más pies cuadrados de área neta de ventas por la Junta de Planificación, dicha aprobación, tendrá una vigencia de treinta (30) meses, a partir de la notificación de la aprobación de la consulta de ubicación por la Junta de Planificación, dentro de cuyo término el centro comercial, deberá estar en real y efectiva construcción. Disponiéndose, que una vez transcurrido el término de treinta (30) meses antes mencionado, sin que el centro comercial se encuentre en real y efectiva construcción, la aprobación correspondiente perderá vigencia. La Junta no aprobará prórroga o reapertura alguna que se presente a los fines de solicitar una extensión al término de vigencia de la consulta de ubicación aprobada… Sec. 10.01.

El reglamento define el concepto "real y efectiva construcción" como sigue:

> Real y Efectiva Construcción – El inicio de las obras de urbanización y construcción permanente de una estructura sobre el terreno, como el vaciado de la losa de piso o de cimientos, el hincado de pilotes, la construcción de columnas, o cualquier obra más allá de la etapa de excavación; o la colocación de una casa manufacturada en sus cimientos.

En la Exposición de Motivos de la Ley Núm. 91 de 20 de junio de 1998, la Asamblea Legislativa manifestó que el término aludido persigue "combatir la especulación de

---

[1] Lenguaje similar se utilizó en el Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Núm. 5244 de 25 de marzo de 1995.

terrenos sobre los cuales se persigue la aprobación de proyectos que finalmente no se desarrollan y en cuyo periodo se compromete la construcción…" de proyectos a gran escala y por lo tanto, "[e]stas situaciones impactan negativamente la economía del país."

En *FW Assoc. v. Junta de Planificación*, Op. de 20 de enero de 2009, 2009 T.S.P.R. 8, 2009 J.T.S. 11, 175 D.P.R. ___ (2009), tuvimos la oportunidad de expresarnos sobre el término de caducidad dentro del cual una consulta de ubicación aprobada tiene que estar en "real y efectiva construcción". En esta decisión reconocimos que el factor tiempo se debe a que las condiciones físicas, económicas y sociales que analiza la Junta de Planificación son de carácter cambiante. Estos términos estatutariamente establecidos no exigen que la construcción se haya terminado dentro del tiempo fijado, sino que se realicen "actos dirigidos a ejecutar las obras autorizadas dentro del plazo dispuesto". *Id.*, pág. 10. En aquella ocasión, decidimos que las obras de excavación, movimiento de tierra y vaciado de cemento para la construcción de cimientos en un área ínfima a la proyectada en la consulta de ubicación no eran suficientes para llenar el requisito de "real y efectiva construcción". Esta instalación de cimientos no era parte de un proceso de construcción continuo que preservara los esfuerzos de planificación de la Junta, por lo que no podía ser considerada dentro del término de caducidad. Este análisis se hizo bajo el contexto de una construcción de cimientos en un espacio de

1,600 pies cuadrados en un proyecto de más de 450,000 pies cuadrados.

Según la Sección 4.02 del Reglamento Núm. 6031, *supra*, una persona que solicite una consulta de ubicación para un proyecto comercial debe presentar la siguiente información: la categoría del proyecto, su descripción, su armonía con la política pública, así como el impacto del comercio en la economía de la región y en la infraestructura existente y propuesta.

La Sección 7.01 obliga a la Junta de Planificación a evaluar la consulta solicitada a tenor con las exigencias legales y de política pública. Esta sección faculta a la Junta de Planificación a consultar, cuando lo considere necesario, a organismos de gobierno y a otras entidades públicas y privadas, para evaluar el proyecto bajo estudio. Además, esta disposición autoriza a la Junta de Planificación a solicitarle al proponente información adicional a la sometida, cuando lo estime necesario. La solicitud "podrá incluir, entre otras", estudios técnicos avanzados, "tales como, pero sin limitarse" a: estudios hidrológicos-hidráulicos, de nivel de ruido, tránsito, evaluaciones ambientales y declaraciones de impacto ambiental o determinación de impacto ambiental no significativo, o cualquier otro documento ambiental que se estime pertinente. Reglamento, Sec. 7.01. Además, la Junta de Planificación tiene la autoridad para celebrar vistas administrativas o públicas cuando las entienda necesarias. *Ibíd*.

Sobre las enmiendas a una consulta de ubicación, el Reglamento dispone en lo pertinente:

> Consideración de Enmiendas a Consultas – De surgir la necesidad de hacer cambios a un proyecto que altere la consulta aprobada, se deberá someter una solicitud de enmienda a la Junta explicando en detalle la naturaleza de la enmienda y la razón para la misma, así como toda documentación (planos, estudios, etc.), pertinente y necesaria para que la Junta pueda tomar la determinación correspondiente. Dicha solicitud deberá someterse en la Oficina del Secretario de la Junta. No obstante lo anterior, la Junta de Planificación podrá solicitar cualquier otra información necesaria que estime pertinente para considerar la enmienda. Como resultado de la evaluación de los cambios propuestos y dependiendo de la naturaleza y magnitud de los mismos con relación a la consulta original, la Junta podrá requerir la radicación de una nueva consulta y el cobro correspondiente.... [Sec. 7.02.]

## III

Las peticionarias plantean: primero, que Mil y PCC eran partes interventoras en la consulta de ubicación impugnada y que la falta de notificación de los procesos ante la Junta de Planificación anuló el trámite seguido; segundo, que no procedía aprobar la cuarta enmienda pues no se sometieron estudios económicos y una nueva declaración de impacto ambiental; tercero, que para la cuarta enmienda, la consulta de ubicación se encontraba caducada y por su magnitud, debió tramitarse como una nueva consulta de ubicación; y cuarto, que la resolución aprobando la cuarta enmienda no cumplió con las exigencias de la L.P.A.U.

A

El escrito presentado por Mil y PCC el 28 de diciembre de 1998, no cumplió con las exigencias de la L.P.A.U. en cuanto a las solicitudes de intervención. Para que se entienda sometida una solicitud de intervención, la Sección 3.5 de la L.P.A.U., *supra*, sec. 2155, exige que la solicitud sea por escrito y "debidamente fundamentada". En su moción, Mil y PCC se limitaron a oponerse a la consulta de ubicación sin fundamentar su solicitud de intervención. La Junta de Planificación no tenía una solicitud de intervención ante su consideración, pues no se sometió una conforme a derecho. La propia disposición de la L.P.A.U. establece una serie de factores a ser considerados por una agencia para conceder o denegar una solicitud de intervención.

Las peticionarias no pusieron a la Junta de Planificación en posición de acoger el escrito como una solicitud de intervención. Según el escrito intitulado "Comparecencia de Interventores", Mil y PCC parten de la premisa de que son parte interventora, sin antes cumplir con los requisitos que exige la L.P.A.U. Para que se entienda sometida una solicitud de intervención es necesario que ésta se fundamente. A manera de ejemplo y de forma no taxativa, la Sección 3.5 de la L.P.A.U., *id.*, sec. 2155, establece criterios para guiar la discreción de una agencia en la adjudicación de una solicitud de intervención. Evidentemente, sólo hay que demostrar los factores que apliquen al caso, pero siempre hay que poner

a la agencia en posición de resolver. "Después de todo, nuestro sistema es uno adversativo de derecho rogado que descansa en la premisa de que las partes, cuidando sus derechos e intereses, son los mejores guardianes de la pureza de los procesos, y de que la verdad siempre aflore." S.L.G. Lloréns v. Srio. de Justicia, 152 D.P.R. 2, 8 (2000). La persona o entidad que pretenda intervenir en un proceso administrativo debe establecer en su solicitud hechos suficientes que permitan a la agencia evaluar su interés y relevancia en el asunto. Las peticionarias no cumplieron con este requisito.

Esta decisión es cónsona con Opiniones previas de este Tribunal. Hemos resuelto que "[l]a liberalización efectuada no equivale, sin embargo, a sancionar la intervención indiscriminada ni a sentar el principio de que toda duda posible debe resolverse a favor de la intervención". Chase Manhattan Bank v. Nesglo, Inc., 111 D.P.R. 767, 770 (1981); Véase también, Rivera v. Morales, supra, pág. 689. No debemos confundir al participante en un procedimiento administrativo con el interventor. Las peticionarias tuvieron la oportunidad de participar en el procedimiento administrativo. Éstas acudieron a la vista pública y presentaron su posición por escrito. Esto es muy diferente a señalar que las peticionarias fundamentaron una solicitud de intervención según lo exige la L.P.A.U. El hecho de que una persona tenga información que pudiera ser útil en el proceso administrativo no le convierte ipso facto en parte interventora.

De una lectura de la L.P.A.U. se puede apreciar fácilmente que una persona que desee ser considerada parte debe demostrar "su capacidad o interés en el procedimiento". Sec. 1.3(e), *supra*, sec. 2102(e). Sólo así la agencia puede aplicar los criterios enumerados en la Sec. 3.5 de la L.P.A.U., *supra*, sec. 2155. Las peticionarias no cumplieron con ese deber, que constituye un paso indispensable para tomar un escrito como una solicitud de intervención. Referente a la consulta solicitada, las peticionarias sugieren en su escrito la necesidad de una "presentación adecuada de su efecto económico" ya que "un centro comercial impacta decisivamente a los negocios existentes y amenaza su estabilidad". Apéndice del recurso, pág. 90. Estas generalidades y otras, como la viabilidad económica del proyecto, o si es necesario o no otro centro comercial en Santa Isabel, fueron discutidas por las peticionarias en calidad de participantes en el proceso pero no en calidad de interventoras. Tanto es así, que la Junta de Planificación, en su resolución de 10 de febrero de 1999, expresó que las peticionarias comparecieron para oponerse por escrito al proyecto y no se les calificó como interventoras. Esto quiere decir que la Junta de Planificación aceptó la participación de las peticionarias, cosa muy distante a reconocerlas como partes interventoras. Esta decisión fue notificada a las peticionarias y éstas no recurrieron de dicha determinación. Así pues, todas las partes confiaron en la

decisión de la agencia de que las peticionarias no eran partes en el proceso administrativo.

Por ser necesario para la resolución completa de este caso, es preciso determinar si Mil Y PCC debieron ser notificadas de las primeras tres solicitudes de enmiendas y de sus resoluciones en calidad de participantes activas. De éstas cumplir con los requisitos del participante activo, no nos cabe duda que en tal calidad debieron ser notificadas de toda solicitud de enmienda y de las resoluciones emitidas por la Junta de Planificación como exigencia del debido proceso de ley. Ese problema no se da en cuanto a la cuarta enmienda porque para ese proceso las peticionarias fueron aceptadas como interventoras y notificadas como tal. Ahora bien, en cuanto al proceso para considerar las primeras tres enmiendas en la consulta, Mil y PCC no fueron certificadas como partes interventoras y reclamaron ante nosotros que debieron ser notificadas de las solicitudes y resoluciones, pero no lo fueron. Bajo el estado de derecho vigente, como Mil y PCC no fueron aceptados como interventores (porque incumplieron con el requisito de solicitarlo por escrito debidamente fundamentado), dicha notificación sólo procedería si se les considerara participantes activas. De un estudio detenido del expediente, ni siquiera bajo la norma imperante hasta hoy se puede considerar a las peticionarias como participantes activas en el proceso. Antes de su comparecencia por escrito, la participación de Mil y PCC se limitó a comparecer a la primera audiencia

pública en la que solamente solicitaron un plazo de diez (10) días para someter su oposición por escrito. De la resolución surge que sus planteamientos fueron debidamente atendidos y sopesados por la Junta de Planificación. Mil y PCC sólo comparecieron a una audiencia pública y sometieron un escrito en oposición al proyecto, mientras ACB compareció a los procesos avanzados a los fines de impugnar la cuarta enmienda. Hay que señalar que del expediente surge que Mil y PCC fueron notificadas de la resolución original en la que se aprobó la consulta de ubicación, de la vista a celebrarse para la segunda enmienda y su resolución, y de la resolución aprobando la tercera enmienda a la consulta de ubicación. No demostraron tener un interés que pudiera ser afectado adversamente por la decisión administrativa. La mera notificación de resoluciones o copias de cortesía no convierten a una persona o entidad en partes. <u>Junta Dir. Portofino v. P.D.C.M.</u>, *supra*.

A pesar de haber tenido estas oportunidades para participar activamente en el proceso, Mil y PCC no procuraron defender sus contenciones. Al no solicitar reconsideración o revisión judicial, estas resoluciones advinieron finales y firmes.

El 5 de diciembre de 2003, la Junta de Planificación emitió un acuerdo aprobatorio para permitir una cuarta enmienda a la propuesta original. Luego, las peticionarias presentaron ante la Junta de Planificación la "Moción de Reconsideración, Intervención, Oposición, Revocación y

Desestimación de Consulta de Ubicación". En la misma, las peticionarias pretendieron justificar su solicitud de intervención demostrando cómo la consulta podía afectar sus intereses. Posteriormente, la Junta de Planificación concedió la intervención de las peticionarias, se reafirmó en su determinación y les notificó sobre el remedio disponible de revisión judicial. Dicho derecho fue ejercido por las peticionarias, lo que trae ante nuestra consideración la impugnación de la cuarta enmienda aprobada por la Junta de Planificación.

B

Debidamente atendido el primer señalamiento de error, pasemos a evaluar la corrección de la actuación de la Junta de Planificación. Partimos de la premisa de que su corrección se presume. Rebollo v. Yiyi Motors, *supra*; Henríquez v. Consejo de Educación Superior, *supra*.

Las peticionarias alegan que la Junta de Planificación no consideró la documentación necesaria para permitir la cuarta enmienda. Señalan que la Junta de Planificación venía obligada a exigir estudios económicos y una declaración de impacto ambiental para conceder la cuarta enmienda. No le asiste la razón.

Surge del expediente que la Junta de Planificación consideró todos estos criterios y esa evaluación merece una deferencia que no ha sido refutada por las peticionarias. *Id.* Según dispone la Sección 7.02 del Reglamento, para considerar una enmienda a una consulta aprobada es discreción de la Junta de Planificación

establecer qué tipo de documentación es necesaria para su evaluación. Las peticionarias no presentan hechos constitutivos de abuso de discreción por parte de la Junta de Planificación que nos mueva a eliminar su criterio especializado. *Ibíd.*

La Junta de Planificación celebró dos vistas públicas para autorizar el proyecto comercial, que después de las enmiendas, tenía un área superficial de 160,000 pies cuadrados. La Junta de Planificación autorizó esta área superficial mediante resolución de 30 de noviembre de 2000. Mil y PCC fueron notificadas y no recurrieron de ella. En este proceso, la Junta de Planificación contó con la participación de la Autoridad de Acueductos y Alcantarillados, la Compañía de Aguas de Puerto Rico, el Departamento de Agricultura, la Autoridad de Energía Eléctrica, el Departamento de Recursos Naturales y Ambientales, la Autoridad de Carreteras y Trasportación, y el Municipio de Santa Isabel (que sometió el Plan de Ordenación Territorial), entre otras entidades y personas.

Además, la Junta de Calidad Ambiental evaluó la Determinación de Impacto Ambiental No Significativo preparado por la Junta de Planificación y certificó el cumplimiento con la Ley Sobre Política Pública Ambiental, Ley Núm. 9 de 18 de julio de 1970, 12 L.P.R.A. sec. 1121 *et seq.* Esta certificación se hizo dos veces. La última fue para la enmienda que se autorizó el 30 de noviembre de 2000. Ya para esta fecha, la construcción se estimaba en un área de 160,000 pies cuadrados, cuestión que no se

varió con la cuarta enmienda. Dicha enmienda se limitó a redistribuir el uso comercial del proyecto. Con el beneficio de un expediente completo, la Junta de Planificación evaluó y autorizó la cuarta enmienda bajo los parámetros en ley.

Una consulta aprobada puede ser enmendada. Este proceso es gobernado por la Sec. 7.02 del Reglamento, titulada "Consideración de Enmiendas a Consultas", y no por la Sec. 7.01 del Reglamento que va dirigida a nuevas consultas. En forma explícita, la Sec. 7.02 le otorga discreción a la Junta de Planificación para solicitar documentos adicionales a los ya sometidos para la consulta original o prescindir de ellos. Solicitarle a quien somete la consulta todos los estudios originalmente presentados no era necesario, sería una carga onerosa y no lo exige la ley ni el reglamento. Es insostenible la contención de que toda enmienda requiere la presentación de los documentos y estudios que ahora imaginemos prudentes desde este Tribunal. No podemos revisar responsablemente estos extremos sin hacer referencia fiel a la reglamentación vigente. La Junta de Planificación utilizó su especialización para identificar la información adicional necesaria. En ausencia de abuso de discreción no podemos intervenir con esa decisión.

A falta de prueba suficiente para refutar la presunción de corrección que cobija una determinación administrativa, concluimos que no se cometieron los errores aludidos.

C

Arguyen las peticionarias ACB, Mil y PCC que para la cuarta enmienda, la consulta de ubicación se encontraba caducada y que procedía una nueva consulta de ubicación.

Como señalamos antes, se exige que el proyecto consultado se encuentre en "real y efectiva construcción" dentro del término de 30 meses dispuesto por ley y reglamento, y que exista un proceso de construcción continuo. FW Assoc. v. Junta de Planificación, *supra*. La consulta de ubicación original se aprobó el 10 de febrero de 1999 y se notificó el 18 de febrero siguiente. Según el plazo provisto en el reglamento, el proyecto debió estar en "real y efectiva construcción" para el 18 de agosto de 2001. El edificio de 60,000 pies cuadrados añadido por enmienda es parte integral del proyecto, por lo que le aplica el mismo término de caducidad que al proyecto original. Ésta es la interpretación de la Junta de Planificación sobre el estatuto a su cargo. Como no es irracional la interpretación de la Junta de Planificación, le debemos deferencia a esta apreciación administrativa. *Ibíd.*

En su resolución de 30 de noviembre de 2000, la Junta de Planificación certificó que el proyecto se encontraba en construcción. Desde entonces, el proyecto siguió un proceso continuo de construcción, tanto así, que para el 7 de noviembre de 2003, se informó que se tenían construidos unos 58,739 pies cuadrados, de los cuales 29,723 pies cuadrados se encontraban ocupados por un supermercado. No

estamos ante una construcción ínfima como ocurrió en FW
Assoc. v. Junta de Planificación, *supra*. En definitiva, no
son suficientes las alegaciones de las peticionarias, sin
más, para controvertir una determinación de la Junta de
Planificación.

La Sección 7.02 del Reglamento concede a la Junta de
Planificación la discreción para determinar si concede la
enmienda propuesta o solicita la radicación de una nueva
consulta. Cónsono con lo anterior, la Junta de
Planificación permitió la cuarta enmienda y no requirió de
los proponentes la radicación de una nueva consulta. No
vemos un abuso de su discreción al así actuar.

La resolución que aprobó la cuarta solicitud de
enmienda debe ser considerada en conjunto con las demás
solicitudes y resoluciones. Por eso se le denomina
enmienda.[2] La Junta de Planificación entendió que los
cambios solicitados en la última solicitud de enmienda
eran razonables y, que no desvirtuaban la consulta
originalmente hecha ni sus resoluciones anteriores. Esta
conclusión no constituye un abuso de discreción. No
debemos ser apáticos o irreverentes con las reglas de
respeto y deferencia en la revisión judicial de las
decisiones de las agencias administrativas. Esa ha sido
la tradición de este Tribunal hasta ahora y lo seguirá

---

[2] La palabra "enmienda" significa: "[p]ropuesta de
variante, adición o reemplazo de un proyecto, dictamen,
informe o documento análogo". Diccionario de la Lengua
Española: Real Academia Española, 22 ed., Madrid, 2001,
Espasa Calpe, T. I, pág. 921. (Énfasis nuestro.)

siendo. Como la resolución que permitió la cuarta enmienda es conforme a derecho y cumple con los parámetros en ley, procede confirmar la sentencia del Tribunal de Apelaciones que convalidó la decisión de la Junta de Planificación.

IV

Así pues, por los fundamentos antes expuestos, se confirma la sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan.

Se dictará Sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Junta de Planificación de Puerto
Rico; y Plaza Santa Isabel, Inc.
          Recurridos

              v.                          CC-2005-1167


A. Cordero Badillo, Inc.; Mil,
Inc.; y Ponce Cash & Carry, Inc.
          Peticionarios



*SENTENCIA*


En San Juan, Puerto Rico, a 14 de octubre de 2009.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo interina. La Juez Asociada señora Rodríguez Rodríguez disiente con opinión escrita a la que se unen el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta.


Juliana Mosquera Soler
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Junta de Planificación de Puerto Rico; y Plaza Santa Isabel, Inc., a Través del Ingeniero Ing. Germán Torres<br><br>Recurridos<br><br>v.<br><br>A. Cordero Badillo, Inc.; Mil, Inc.; y Ponce Cash & Carry, Inc.<br><br>Peticionarios | | CC-2005-1167 |

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta

San Juan, Puerto Rico, a 14 de octubre de 2009

Confirma la Opinión que anuncia este Tribunal los estrechos senderos por los cuales marcha el Derecho puertorriqueño. En esta ocasión, se estrechan las vías para que un ciudadano pueda lograr ser parte de un procedimiento adjudicativo ante una agencia del Estado. La posición avalada por una mayoría de los miembros de este Foro trastoca el derecho de los ciudadanos a participar en los asuntos del gobierno que le afectan directamente y, así, se diluye la transparencia que debe caracterizar a las actuaciones administrativas en todo sistema democrático. En vista de que no suscribo el criterio mayoritario, procedo a exponer las razones que provocan mi disenso.

**I.**

Es mi criterio que la posición adoptada por una mayoría de los miembros de este Foro constituye un ejercicio regresivo que lesiona el principio de liberalidad en la participación de los ciudadanos en los procedimientos administrativos.[3] La Opinión mayoritaria anuncia el destierro de la figura de la participación activa y, a su vez, coloca trabas a la intervención como mecanismo para ser parte en un procedimiento adjudicativo. De esta forma, este Tribunal se aparta del principio de que las agencias deben facilitar la participación de los ciudadanos en las decisiones y asuntos gubernamentales que les atañen.

De una parte, la mayoría resuelve que la moción intitulada *Comparecencia de los Interventores,* presentada por Mil, Inc. Y Ponce Cash and Carry, no constituye una solicitud de intervención fundamentada porque incumplió las exigencias de la sección 3.5 de la Ley núm. 170 del 12

---

[3] "Public participation is best understood as a challenge to the traditional management of government policy by experts in administrative agencies. From the late nineteenth century until the middle of the twentieth century, public administration in the United States was dominated by the "managerial" model in which government administrators were entrusted to identify and pursue the common good.

[. …]

A fundamental challenge for administrative governance is reconciling the need for expertise in managing administrative programs with the transparency and participation demanded by a democratic system." T.Beierle and J. Cayford, *Democracy in Practice: Public Participation in Enviromental Decisions,* Washington D.C., Ed. Resources for the Future, 2002, págs. 2-3.

de agosto de 1988[4] (en adelante Ley de procedimiento administrativo uniforme). Una lectura de la referida moción revela que, contrario a lo resuelto por este Tribunal, Mil, Inc. y Ponce Cash and Carry establecieron un interés legítimo en el procedimiento adjudicativo y fundamentaron su solicitud de intervención.[5]

Primeramente, en la referida moción, los peticionarios expresaron que Mil, Inc. era propietaria de un centro comercial, ubicado en la carretera número 153 de Santa Isabel, en el cual Ponce Cash and Carry operaba un supermercado. Expusieron que el desarrollo del centro comercial, objeto de la consulta de ubicación, impactaría los negocios existentes y amenazaría su estabilidad. Arguyeron, además, la ausencia total de prueba sobre la viabilidad económica del proyecto.

En segundo lugar, indicaron que, en el centro comercial en donde estaba ubicado Ponce Cash and Carry, quedaba disponible un espacio para alquiler de 38,000 pies cuadrados. Además, expusieron que estaba aprobada la construcción de un nuevo centro comercial, entre Coamo y Santa Isabel, el cual estaría accesible para los residentes de dicha zona. Cuestionaron la necesidad de construir el centro comercial propuesto pues afirmaron que a pocos minutos de éste ubicaba la estructura, destinada a

---

[4] 3 L.P.R.A. 2155.
[5] Aunque el escrito presentado por Mil, Inc. y Ponce Cash and Carry se intituló *Comparecencia de Interventores,* éste incluía una solicitud expresa para que la agencia reconociera a los comparecientes como parte en el proceso adjudicativo.

uso comercial, perteneciente a Mil, Inc. la cual contaba con amplios espacios vacantes. En virtud de lo anterior, solicitaron expresamente que se les permitiera intervenir en el procedimiento de consulta.

Al referirse al escrito antes reseñado, la Opinión califica su contenido como meras "generalidades" y afirma que aunque Mil, Inc. y Ponce Cash and Carry presentaron por escrito su posición, ello no implica que fundamentaron su solicitud de intervención. Concluye que la solicitud presentada no es una conforme a derecho porque no aborda los factores que, según la sección 3.5 de la Ley de procedimiento administrativo uniforme, *supra*, debe considerar la agencia para determinar si concede la intervención. Además, la posición mayoritaria afirma que la solicitud de intervención no expone hechos suficientes ni los fundamentos para sustentar la intervención de Mil, Inc. y Ponce Cash and Carry, sino que se limita a señalar las razones para éstos oponerse a la aprobación de la consulta. Dicho análisis, por demás formalista, confunde los elementos que son suficientes para considerar una solicitud de intervención como una fundamentada y aquellos factores establecidos en la Ley de procedimiento administrativo uniforme, para guiar la discreción de la agencia en su determinación sobre la concesión de una solicitud de intervención. Veamos.

El mecanismo de intervención, establecido en la Ley de procedimiento administrativo uniforme, posibilita que sea parte en un procedimiento adjudicativo una persona que

inicialmente no figuraba como tal, más demostró un interés particular que podría verse adversamente afectado por la determinación administrativa.  Sección 1.3 de la Ley de procedimiento administrativo uniforme, *supra,* 3 L.P.R.A. sec. 2102.  *Véanse además, Com. de Ciudadanos Caimito v. G.P. Real Prop., S.E. y otros,* res. de 4 de junio de 2008*; 2008 T.S.P.R. 105; 174 D.P.R. \_\_\_; San Antonio Maritime v. P.R. Cement. Co.,* 153 D.P.R. 374, 391 (2001).  De otra parte, la sección 3.5 de la Ley de procedimiento administrativo uniforme, *supra*, dispone que: "[c]ualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia, podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento".  *Véase, Rivera v. Morales*, 149 D.P.R. 672 (1999).  Surgen de la citada disposición dos elementos centrales: primero, la persona que solicita intervenir debe ostentar un interés legítimo; y segundo, debe presentar una solicitud por escrito y fundamentada.

Sobre el interés legítimo, requerido por la Ley de procedimiento administrativo uniforme, hemos expresado que éste goza de mayor laxitud que el requisito de legitimación activa y abarca un abanico de intereses tales como:  ambientales, sociales, y económicos. *San Antonio Maritime v. P.R. Cement Co., supra,* pág. 393.  En ese tenor, en *San Antonio Maritime v. P.R. Cement Co., supra,* reconocimos que "[e]l interés económico de un competidor preocupado por una justa y legal competencia en el mercado

es, sin duda, un interés que no queda descartado por el concepto de 'interés legítimo' que sirve de antesala a cualquier solicitante de intervención en los procesos adjudicativos de una agencia administrativa". *Id.*, págs. 394-95.

Ahora bien, el hecho de que una persona ostente un interés legítimo y presente una solicitud de intervención fundamentada no implica que la agencia esté obligada a conceder la intervención. La Ley de procedimiento administrativo uniforme enumera una serie de factores que debe considerar la agencia para determinar si concede o deniega la solicitud de intervención.[6] *Véase*, *Mun. de San*

---

[6] Específicamente, la sección 3.5 de la Ley de procedimiento administrativo uniforme, *supra,* dispone lo siguiente:

"La agencia podrá conceder o denegar la solicitud, a su discreción, tomando en consideración, entre otros, los siguientes factores:

(a) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.

(b) Que no existan otros medios en derecho para que el peticionario pueda proteger adecuadamente su interés.

(c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.

(d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.

(e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.

*Juan v. J.C.A.,* 152 D.P.R. 673, 703-704 (2000). Además, la referida ley faculta a la agencia para requerir la evidencia que estime necesaria para emitir su determinación. *Id.*

Es preciso indicar que, si bien la Ley de procedimiento administrativo uniforme establece una serie de factores para guiar a la agencia en su determinación sobre una solicitud de intervención, dicha ley prescribe que los factores enumerados deben aplicarse liberalmente en favor de la concesión de la solicitud. *Id.* En ese tenor, este Tribunal ha reafirmado que los criterios establecidos en la sección 3.5 de la Ley de procedimiento administrativo uniforme, *supra,* "deben aplicarse liberalmente, de manera que se cumpla con la política pública de participación ciudadana…". *Com. de Ciudadanos Caimito v. G.P. Real Prop., S.E., supra.* Más aun, en *Com. de Ciudadanos Caimito v. G.P. Real Prop.,* al expresarnos sobre el principio de liberalidad establecido en la Ley de procedimiento administrativo uniforme, afirmamos que las agencias deben "facilitar la participación de aquellos

(f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.

(g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.

La agencia deberá aplicar estos criterios de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención."

ciudadanos cuyos intereses puedan ser afectados por la actuación administrativa, para evitar aplicar su pericia a una información que no refleje la situación real de dichos ciudadanos".

Una vez la agencia considere la solicitud de intervención, y decida si concederla o denegarla, tiene la obligación de notificar por escrito su determinación, así como los fundamentos para su decisión y la disponibilidad de un recurso de revisión judicial. Sección 3.6 de la Ley de procedimiento administrativo uniforme, *supra*, 3 L.P.R.A. 2156. *Véase, Mun. de San Juan v. J.C.A.*, 152 D.P.R. 673, 703 (2000). Cabe mencionar que la decisión que emita la agencia en relación con una solicitud de intervención es una determinación de derecho y no constituye un asunto comprendido dentro del marco del conocimiento especializado que se le atribuye al organismo administrativo. *San Antonio Maritime v. P.R. Cement Co., supra,* pág. 397.

La Opinión mayoritaria soslaya examinar si la Junta de Planificación incumplió con el requisito de notificar a Mil, Inc. y Ponce Cash and Carry su determinación sobre la solicitud de intervención pues concluye que la agencia no tenía ante sí una petición de intervención que requiriese su consideración. Recordemos, sin embargo, que el propósito medular de notificar una denegatoria a una solicitud de intervención es que el solicitante pueda cuestionar la determinación de la agencia mediante un recurso de revisión judicial. *Mun. de San Juan v. JCA,*

supra, pág. 703. Si la agencia estima que no tiene ante sí una solicitud de intervención fundamentada y, por tal razón, no notifica determinación alguna a quien solicita intervenir, privaría al solicitante de cuestionar ante el foro judicial si la agencia incurrió en un error de derecho al determinar que la solicitud no estaba debidamente fundamentada. El razonamiento acogido por la mayoría resulta circular y, evidentemente, contrario al requisito de notificación dispuesto en la sección 3.6 de la Ley de procedimiento administrativo uniforme, *supra*.

En un intento fútil por eludir el problema de ausencia de notificación en torno a la solicitud de intervención, la Opinión señala que en la resolución del 10 de febrero de 1999, mediante la cual la Junta de Planificación aprobó la consulta original, dicha agencia aceptó la participación de Mil, Inc. y Ponce Cash and Carry pero no su intervención. Cabe aclarar que en la referida resolución, la Junta de Planificación enumeró, como parte de sus determinaciones de hechos, las distintas personas y agencias que participaron en el transcurso del proceso. Sucintamente, la agencia indicó que Mil, Inc. y Ponce Cash and Carry comparecieron a las vistas públicas, se opusieron a la aprobación de la consulta y solicitaron presentar su ponencia por escrito. Evidentemente, tal referencia no constituye una notificación fundamentada sobre la aceptación o denegatoria de la solicitud de

intervención que presentaron Mil, Inc. y Ponce Cash and Carry luego de comparecer a la vista.[7]

Mil, Inc. y Ponce Cash and Carry presentaron una solicitud de intervención fundamentada que debía ser atendida por la agencia conforme a las exigencias de la sección 3.6 de la Ley de procedimiento administrativo uniforme, *supra*. En ese tenor, no comparto la afirmación, avalada por una mayoría de los miembros de este Foro, de que la solicitud presentada carecía de fundamentos que la sustentasen por ésta no discutir los factores que enumera la Ley de procedimiento administrativo uniforme como guías para que las agencias consideren las solicitudes de intervención.

Si bien la ley enumera una serie de factores que guían a la agencia al conceder o denegar la intervención, ello no implica que quien solicita intervenir deba sustentar su petición argumentando la presencia o ausencia de cada uno de los criterios enumerados. Los requisitos establecidos en la ley no constituyen una lista de cotejo contra la cual se revisa el contenido de una moción de intervención y se va marcando cuáles se han incluido y cuáles no.

Ciertamente, no constituiría una solicitud fundamentada aquella en la que sólo se solicita intervenir

---

[7] Toda vez que la Junta de Planificación no notificó determinación alguna referente a la denegatoria o aceptación de la solicitud de intervención, resulta confusa la afirmación de la Opinión mayoritaria de que: "todas las partes confiaron en la decisión de la agencia de que las peticionarias no eran partes en el proceso administrativo".

en el procedimiento sin exponer los fundamentos para la petición. No obstante, Mil, Inc. y Ponce Cash and Carry presentaron una solicitud de intervención en la que expusieron un interés legítimo en participar del procedimiento adjudicativo así como las razones que sustentaban su posición. Lo anterior es suficiente para satisfacer las exigencias de la sección 3.5 de la Ley de procedimiento administrativo uniforme de que la solicitud de intervención se presente por escrito y fundamentada.

Además, la solicitud de intervención reflejaba que los solicitantes podían aportar información que, a la luz del Reglamento de Procedimientos Adjudicativos núm. 6031 de la Junta de Planificación de 13 de octubre de 1999 (en adelante Reglamento de Procedimientos Adjudicativos), era pertinente al proceso de consulta pendiente a la agencia. Particularmente, la sección 4.02 del Reglamento de Procedimientos Adjudicativos establece que, en procedimientos de consulta de ubicación referentes a facilidades comerciales, la Junta de Planificación deberá considerar, entre otros factores, lo siguiente: los beneficios del proyecto propuesto para la ciudadanía; la creación de empleos; la actividad económica existente y aprobada en el área de mercado; la saturación del mercado; el efecto del proyecto para el comercio existente; y el impacto adverso o positivo del proyecto en términos comerciales generales. Además, el citado reglamento dispone que la Junta de Planificación deberá considerar la capacidad de infraestructura existente en el sector para

el cual se propone el proyecto, así como la capacidad de la infraestructura propuesta. *Id.*

Precisamente, la moción presentada por Mil, Inc. y Ponce Cash and Carry reflejaba, de una parte, un interés legítimo de los solicitantes como competidores y ofrecía, además, a la Junta de Planificación información pertinente sobre: la actividad económica existente, el posible impacto del proyecto en el comercio de la zona y la capacidad de la infraestructura disponible. Así pues, lo expuesto en la referida solicitud guarda estrecha relación con el propósito dual del mecanismo de intervención de facilitar la participación de personas cuyos intereses puedan ser afectados por la actuación administrativa y, a su vez, permitir que la agencia se beneficie de la experiencia ciudadana, de forma tal que su decisión no se realice en abstracción de las situaciones que enfrenta la ciudadanía.

Las razones expresadas por Mil, Inc. y Ponce Cash and Carry para oponerse a la aprobación de la consulta constituían, simultáneamente, los fundamentos que sustentaban su solicitud. La solicitud de intervención exponía razones suficientes para apoyar la intervención de Mil, Inc. Y Ponce Cash and Carry en el procedimiento de consulta por lo que correspondía a la Junta de Planificación evaluar dicha petición –a la luz de los factores establecido por ley– y notificar su determinación al respecto.

No obstante, la Junta de Planificación aprobó la consulta sin emitir resolución alguna referente a la solicitud de intervención de Mil, Inc. y Ponce Cash and Carry.[8]  La Opinión mayoritaria no discute las consecuencias de tal incumplimiento pues opta por resolver que la Junta de Planificación no tenía ante sí una solicitud de intervención fundamentada que requiriese ulterior consideración por parte de la agencia.  Tal posición no encuentra apoyo en la sección 3.5 de la Ley de procedimiento administrativo uniforme y contraviene el requisito de notificación prescrito en la sección 3.6 de dicha ley.

Además, la posición sostenida por la Opinión mayoritaria admite que las agencias no consideren debidamente una solicitud de intervención presentada por quien refleja un interés legítimo en el procedimiento adjudicativo.  Asimismo, vulnera el interés público de propiciar que quien pueda verse afectado por la determinación que se tome en un procedimiento adjudicativo participe efectivamente en dicho proceso, de modo que la agencia esté en posición de emitir una decisión más informada.  Este interés adquiere particular relevancia en

---

[8]  Estimo que el incumplimiento de la Junta de Planificación de notificar su determinación sobre la solicitud de intervención no acarrearía, necesariamente, la nulidad de todo el procedimiento.  A pesar de que Mil, Inc. y Ponce Cash and Carry recibieron varias notificaciones relativas a los procedimientos posteriores a la consulta inicial, no fueron diligentes en cuestionar la ausencia de notificación y que no estaban siendo considerados como parte en el transcurso de los procedimientos ante la agencia.

un procedimiento de consulta que implica consideraciones de política pública en la evaluación de propuestos usos de terreno y el cual puede impactar, decisivamente, el desarrollo físico, social y económico de un sector. En fin, el proceder de la mayoría constituye un retroceso al imponerle al mecanismo de intervención una rigurosidad inexistente en nuestro ordenamiento, de manera tal que se limita el acceso de la ciudadanía a la plena participación en los procesos administrativos.

## II.

Tras trastocar la figura del interventor, mediante una interpretación restrictiva de lo que constituye una solicitud de intervención fundamentada, la Opinión mayoritaria opta por el camino más radical de eliminar la participación activa como mecanismo para que una persona pueda ser parte en un procedimiento adjudicativo. Ello, a manera de *dictum* pues la controversia del caso de autos nada tiene que ver con la figura del participante activo. No obstante, y en vista de que la Opinión del Tribunal insiste en discutir y descartar la figura, procederé a exponer mi criterio en cuanto a los argumentos allí esbozados.

En *Lugo Rodríguez v. J.P.,* 150 D.P.R. 29 (2000), este Tribunal interpretó el inciso j de la sección 1.3 de la Ley de procedimiento administrativo uniforme, *supra*, el cual establece que es "parte" en un procedimiento adjudicativo:

toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, **o que se le permita intervenir o participar** en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento.

(Énfasis suplido.)

Resolvimos entonces que el texto de la disposición citada establece la participación como un mecanismo adicional a la intervención para que sea parte en un procedimiento adjudicativo una persona que inicialmente no figuraba como tal. No obstante, aclaramos que una mera participación en el transcurso del procedimiento era insuficiente para ser considerado parte de éste. Más bien, en *Lugo Rodríguez v. J.P.* este Foro resolvió que es parte en un procedimiento adjudicativo quien ostente un interés legítimo y haya participado activamente en dicho procedimiento, utilizando los mecanismos disponibles para defender su posición.[9] Indicamos que "un **participante activo** es, pues, aquél que utiliza los remedios disponibles en aras de proteger su interés e interviene de

---

[9] En esa ocasión resolvimos que son parte en un procedimiento adjudicativo:

"1) el promovente; (2) el promovido; (3) el interventor; (4) aquel que haya sido notificado de la determinación final de la agencia administrativa; (5) aquel que haya sido reconocido como "parte" en la disposición final administrativa; y (6) aquel que participa activamente durante el procedimiento administrativo y cuyos derechos y obligaciones puedan verse adversamente afectadas por la acción o inacción de la agencia".

*Lugo Rodríguez v. J.P., supra*, pág. 44. *Véase además, Junta de Dir. Portofino v. P.D.C.M., supra.*

forma tal en el proceso que resultaría injusto y arbitrario no considerarlo una "parte". *Id.,* págs. 43-44. *Véase, Junta de Dir. Portofino v. P.D.C.M.*, res. de 2 de abril de 2008, 2008 T.S.P.R. 54, 173 D.P.R. __ (2008).

La Opinión mayoritaria revoca la norma pautada en *Lugo Rodríguez v. J.P.* y se inclina hacia resultados "injustos y arbitrarios" pues anuncia que considera de mayor importancia evitar confusión en la determinación de quién es parte en un procedimiento adjudicativo. Es decir, la Opinión mayoritaria excluye de la oportunidad de revisión judicial al participante activo por considerar que resulta en extremo confuso determinar si una parte ostenta un interés legítimo y ha utilizado los remedios disponibles en el transcurso del procedimiento adjudicativo para defender dicho interés. *Véase*, *Lugo Rodriguez v. J.P.*, págs. 43-44.

Como apoyo para tal proceder, la Opinión cita el análisis del profesor William Vázquez Irizarry quien critica rigurosamente la norma pautada en *Lugo Rodríguez v. J.P.* Cabe referirnos a algunos pronunciamientos de dicho análisis a los cuales alude someramente la Opinión mayoritaria. Si bien, el profesor Vázquez Irizarry crítica la figura del participante activo, éste señala que podría plantearse que las formalidades del mecanismo de intervención pueden resultar lesivas a la política de apertura de los procedimientos adjudicativos a la ciudadanía. En ese tenor, se refiere al dilema de que la solicitud de intervención puede representar:

una alternativa muy formal cuya exigencia en el caso de ciudadanos que se oponen a una consulta puede resultar una imposición muy onerosa. Después de todo, el escenario que supone esta discusión es uno donde estos opositores acuden por sí mismos al proceso sin el beneficio de un representante legal que se pueda encargar de un trámite como sería solicitar intervención.

W. Vázquez Irizarry, *Análisis del Término 2007-2008: Derecho Administrativo*, 78 Rev. Jur. U.P.R. 571, 596 (2009).

Además, señala que a la claridad y certidumbre que caracterizan al mecanismo de intervención, cabría oponer que este mecanismo "supone un formalismo que resulta lesivo a una política de apertura de los procedimientos a la ciudadanía". *Id.*, pág. 605. No obstante, según expone la mayoría, Vázquez Irizarry entiende que la norma pautada en *Lugo Rodríguez v. J.P.* no constituye el mecanismo adecuado para superar el problema antes indicado.

El profesor Vázquez Irizarry propone que dicho dilema puede conciliarse mediante el mecanismo de intervención si las agencias actúan "de forma proactiva en al menos (3) renglones: orientación, preparación de formularios y pronta atención". *Id.* Sostiene que "la efectividad del mecanismo de intervención no depende de que esté consignado en la LPAU, sino de que la agencia asuma una responsabilidad afirmativa de asegurarse que todas las personas que pueden tener contacto con el proceso conocen dicha alternativa". *Id.* En fin, Vázquez Irizarry propone eliminar las complejidades que podría representar la figura del participante activo, pero sin lesionar el interés de apertura de los procedimientos adjudicativos a

la ciudadanía. Esto último requeriría que las agencias actúen afirmativamente conforme a la propuesta del profesor Vázquez Irizarry y, además, que evalúen las solicitudes de intervención de conformidad con el principio de liberalidad prescrito en la ley.

No obstante, Vázquez Irizarry reconoce que la Ley de procedimiento administrativo uniforme no exige que las agencias actúen según su propuesta. Ello implica que un ciudadano que demuestra un interés legítimo y participa activamente en el procedimiento adjudicativo no tendría el remedio de revisión judicial si la agencia opta por no actuar afirmativamente para orientarle sobre el mecanismo de intervención y sus exigencias formales. Es decir, sin una acción afirmativa por parte de las agencias, el mecanismo de intervención podría carecer de eficacia para evitar lesiones a la política de apertura de los procedimientos adjudicativos a los ciudadanos que se ven afectados por la determinación de la agencia.

Bajo estas circunstancias, reconocer la intervención, con las formalidades que exige, como único mecanismo para que un ciudadano pueda convertirse en parte en un procedimiento adjudicativo, supone lesiones a la política de facilitar una participación efectiva por parte de los ciudadanos que ostenten un interés legítimo en los procedimientos ante las agencias. Más aun cuando la Opinión que anuncia este Foro introduce a este ordenamiento una interpretación sumamente restrictiva sobre lo que constituye una moción de intervención

fundamentada, apartándose de la naturaleza de los procedimientos administrativos y equiparándolos más a las formalidades de un procedimiento judicial.

Dentro del marco antes discutido, la interpretación de la sección 1.3 de la Ley de procedimiento administrativo uniforme, adoptada por este Tribunal en *Lugo Rodríguez v. J.P.,* que reconoce la participación activa como mecanismo adicional para que una persona sea parte en un procedimiento adjudicativo, es cónsona con el interés público de posibilitar una participación efectiva en los procedimientos adjudicativos al ciudadano que pueda verse afectado por la determinación de la agencia. Además, la figura del participante activo permite superar las consecuencias lesivas a dicho interés que podrían ocasionar las formalidades del mecanismo de intervención.

En contraposición a lo anterior, la Opinión mayoritaria alude a que la figura del participante activo ha generado incertidumbre al momento en que la parte que interesa recurrir de la determinación de la agencia debe identificar quien es parte para efectos de la notificación del recurso de revisión judicial. Indica que la ausencia de notificación al participante activo tenía la consecuencia "devastadora" de privar al foro apelativo de jurisdicción e implicar la desestimación irreversible del recurso; problema que la Opinión afirma queda superado al eliminar la figura del participante activo.

Sin embargo, el problema al cual alude la Opinión fue atendido por este Foro en *Junta de Dir. Portofino v.*

*P.D.C.M.* al resolver que las agencias tienen la obligación de identificar en la resolución que emitan a quien se le notifica en calidad de parte en el procedimiento. La agencia es responsable de realizar la determinación sobre quién es parte y, así, quien interesa acudir en revisión judicial cuenta con la determinación previa del organismo administrativo sobre las partes a quienes debe notificar el recurso. No obstante, para el criterio mayoritario dicha norma es insuficiente porque persiste, según se expresa en la Opinión, un problema adicional: la figura del participante activo mantiene un criterio "subjetivo" para determinar quién es parte en el procedimiento adjudicativo.

Nótese que la Opinión mayoritaria descarta la figura del participante activo por considerar que no se justifica mantener una norma que, según entiende la mayoría, requiere un ejercicio "subjetivo" o poco "certero" para determinar el grado de participación requerido para ser parte en un procedimiento adjudicativo. En contraposición, resalta la objetividad y certidumbre del mecanismo de intervención. Sin embargo, la Opinión es reflejo de que el mecanismo de intervención entraña sus propias complejidades e incertidumbres. Entre ellas, determinar: quién ostenta un interés legítimo, qué constituye una moción de intervención suficientemente fundamentada, en qué circunstancias la agencia no estaría obligada a atender una solicitud de intervención por no estar debidamente fundamentada, o cuándo la agencia ha

abusado de su discreción al denegar la solicitud de intervención.

En ese tenor, la Opinión afirma que una solicitud de intervención debe exponer hechos y fundamentos suficientes que la sustenten y demostrar "claramente" cómo se verá afectado el interés del solicitante – el cual según el criterio mayoritario debe ser un interés "sustancial"– de forma tal que se establezca "claramente el deber de la agencia de contestarla".[10] ¿No constituiría el análisis sobre si se ha satisfecho el *grado* de "claridad" y "suficiencia" requerido en la Opinión, uno que podría calificar, a fin de cuentas, como subjetivo?

Ciertamente, el ejercicio que debe realizar la agencia de determinar quién es parte en el proceso adjudicativo puede resultar en ocasiones complejo. Sin embargo, soy del criterio que la complejidad que en determinadas circunstancias podría entrañar resolver si, como cuestión de derecho, una persona es parte de un procedimiento adjudicativo, no constituye un fundamento suficiente para coartar vías de participación ciudadana reconocidas en este ordenamiento. No puedo suscribir una Opinión que sostiene que es preferible revocar normas establecidas, eludir resolver cuestiones de derecho o arribar a resultados injustos bajo el pretexto de la

---

[10] Mediante estas aseveraciones la Opinión le transfiere a la agencia la prerrogativa de determinar cuándo cumplir el deber prescrito en la sección 3.6 de la Ley de procedimiento administrativo uniforme, de notificar su determinación en torno a una solicitud de intervención.

complejidad.[11]  Esa alegada dificultad nunca puede ser base

para restringir derechos ciudadanos.

**La tesis propuesta en la ponencia mayoritaria de que**

**hay que evitar la complejidad y erradicar las normas que**,

**según    el    criterio    mayoritario,    califiquen    como**

**"subjetivas" se utiliza para, nuevamente, limitar derechos**

**ciudadanos mediante pronunciamientos no relacionados con**

**las controversias ante nuestra consideración.**  Además, el

razonamiento  mayoritario  obvia  que  en  los  procesos

administrativos  y  judiciales  las  agencias  administrativas

y  los  tribunales  se  enfrentan  a  asuntos  confusos  y

dificultosos  como  parte  de  su  quehacer  diario.   No  puede

ser,  entonces,  que  para  facilitar  la  gestión  de  la  agencia

administrativa  o  un  tribunal,  se  mengüen  los  derechos  de

las personas.

En  fin,  al  eliminar  la  figura  del  participante  activo

e  interpretar  en  términos  sumamente  restrictivos  lo  que

constituye  una  solicitud  de  intervención  fundamentada,

---

[11] La Opinión mayoritaria no refleja, no obstante, problema alguno en aplicar la norma que prospectivamente destierra de este ordenamiento bajo la excusa de que resulta confusa en su aplicación.  Sin mayor problema, concluye que la participación de Mil, Inc. y Ponce Cash and Carry es insuficiente para catalogarlos como participantes activos en el procedimiento, pues éstos no utilizaron los remedios disponibles para defender su posición.  No obstante, y como mencioné anteriormente, la controversia traída ante nuestra consideración en el recurso de *certiorari* era referente a la intervención de Mil, Inc. y Ponce Cash and Carry en el procedimiento ante la Junta de Planificación. Por ello estimo innecesaria la discusión sobre si éstos debían catalogarse como participantes activos, y considero que la revocación de la norma pautada en *Lugo Rodríguez v. J.P.* constituye un *dictum,* sobre todo cuando entiendo que la controversia planteada era referente a la solicitud de intervención.

este Foro se aparta de los intereses que subyacen el principio de liberalidad en la participación de los ciudadanos en los procedimientos adjudicativos. Particularmente, se restringen las vías para que ciudadanos, cuyos intereses puedan verse afectados por la determinación administrativa, puedan participar en los procesos que le conciernen directamente y obtener, eventualmente, la oportunidad de acudir en revisión judicial. Igualmente, la Opinión aumenta la probabilidad de que las determinaciones de las agencias se realicen en abstracción y sin el beneficio los conocimientos y la experiencia de la ciudadanía que podría verse afectada por su determinación.

## III.

En tercer lugar, no puedo suscribir la Opinión mayoritaria porque considero que son desacertados los fundamentos que esboza para confirmar la aprobación, por parte de la Junta de Planificación, de la cuarta enmienda a la consulta. Entre otros aspectos, en el recurso de *certiorari,* los peticionarios argumentan que, al ser el cambio propuesto por la cuarta enmienda uno sustancial, la Junta de Planificación debió requerir una nueva consulta de ubicación y la preparación de una declaración de impacto ambiental. Además, arguyen que la aprobación de la cuarta enmienda no es válida toda vez que la Junta de Planificación, al tomar su determinación, no tuvo ante sí la información requerida por la reglamentación aplicable y no emitió una resolución con determinaciones de hecho y

derecho según lo exige la Ley de procedimiento administrativo uniforme.

Resuelve la Opinión mayoritaria que no se cometieron los errores señalados porque, previo a la aprobación de la cuarta enmienda, la Junta de Planificación convocó la celebración de dos vistas públicas y obtuvo los comentarios de distintas agencias con relación al proyecto. Entiende que, así, la agencia tuvo ante su consideración la información suficiente para aprobar la cuarta enmienda. Me resulta incompatible la afirmación de que los procesos anteriores a la solicitud de esta última enmienda produjeron la información necesaria para su evaluación, cuando el cambio en los usos de las instalaciones, finalmente solicitado, no era entonces objeto de discusión.

De otra parte, la Opinión enfatiza que, luego del proceso de segunda enmienda a la consulta, ya el proyecto comercial propuesto abarcaba un área superficial de 160,000 pies cuadrados. Parece insinuar, con tal señalamiento, que al no haber mayor variación en al área del proyecto no se alteraron significativamente las condiciones de la consulta. Entiendo que es contario al Reglamento de Procedimientos Adjudicativos reducir el proceso de análisis de la consulta, o de enmiendas a ésta, a evaluar el área que ocupará el proyecto propuesto.

Este Tribunal ha sostenido que un proceso de evaluación de una consulta de ubicación "debe integrar todos los elementos de planificación, incluyendo la

viabilidad del proyecto propuesto…". *Hatillo Cash & Carry v. A.R.P.E.,* res. de 27 de mayo de 2008, 2008 T.S.P.R. 97, 174 D.P.R.___ (2008). Además, hemos señalado que a través del mecanismo de **consulta "la Junta de Planificación hace determinaciones de política pública mediante los procesos de adjudicación"** por lo cual **"[l]a agencia debe emitir decisiones detalladas, razonadas y fundamentadas, disponibles al público para que sirvan de guía y puedan ser revisadas por un tribunal para limitar la discreción de la agencia".** *Hatillo Cash & Carry v. A.R.P.E.,* supra. (Énfasis suplido.)

En ese tenor, el Reglamento de Procedimientos Adjudicativos exige que en áreas no zonificadas – como el área donde se desarrolló el proyecto objeto de la consulta que está ante nuestra consideración– debe realizarse una consulta de ubicación para "propuestos usos de terreno que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social, pudiesen afectar, significativamente el desarrollo de un sector". Sección 2.00 del Reglamento de Procedimientos Adjudicativos, *supra.* El propósito de la consulta es considerar de forma integral el impacto del proyecto propuesto para los escenarios antes indicados. *Véase*, sección 3.03 del Reglamento de Procedimientos Adjudicativos, *supra.*

En vías de que la Junta de Planificación pueda realizar el análisis requerido, la sección 4.02 del Reglamento de Procedimientos Adjudicativos, *supra*, exige que una solicitud de consulta, referente al desarrollo de

un proyecto comercial, incluya información que especifique: los tipos de usos y área neta de venta de cada tipo; las características físicas del proyecto; cómo se beneficia la ciudadanía; cómo el proyecto se enmarca en el contexto de la actividad comercial existente y aprobada; el impacto adverso o positivo que tendrá en el área de mercado; y la capacidad de infraestructura disponible y la propuesta. En el proceso de consulta la Junta de Planificación debe considerar integralmente los factores antes indicados.

De otra parte, la sección 7.02 del Reglamento de Procedimientos Adjudicativos, *supra,* la cual establece el procedimiento para la consideración de enmiendas a la consulta, dispone lo siguiente:

> De surgir la necesidad de hacer cambios a un proyecto que altere la consulta aprobada **se deberá someter una solicitud de enmienda a la Junta explicando en detalle la naturaleza de la enmienda y la razón para la misma, así como toda la documentación (planos, estudios etc.) pertinente y necesaria para que la Junta pueda tomar la determinación correspondiente.[…]** Como resultado de la evaluación de los cambios propuestos y dependiendo de la naturaleza y magnitud de los mismos con relación a la consulta original, la Junta, podrá requerir la radicación de una nueva consulta y el cobro correspondiente. […] La parte proponente notificará a cualquier interventor, copia de toda la documentación sometida al radicar la enmienda sometiendo evidencia de dicha notificación a la Junta de Planificación.

> *Id.* (Énfasis suplido.)

En tanto un procedimiento de enmienda altera las condiciones aprobadas en la consulta, es necesario que la Junta de Planificación evalúe la forma en que el cambio propuesto incide o altera los distintos escenarios

evaluados en el proceso inicial. Una enmienda a la consulta no puede aprobarse sólo a base de un análisis matemático de la variación en el área que abarca el proyecto e ignorar las repercusiones que tendrán los cambios en los usos propuestos. Aunque la enmienda mantenga esencialmente inalterada el área superficial de las estructuras, un cambio radical en el tipo de establecimiento comercial proyectado podría alterar significativamente las repercusiones que tendrá el proyecto en el sector.

Los objetivos del proceso de consulta exigen que la Junta de Planificación evalúe los efectos del cambio propuesto y considere si la enmienda solicitada es cónsona con la política pública. Ello requiere, a su vez, que la parte que solicita la enmienda presente una solicitud detallada acompañada de la información necesaria para que la Junta de Planificación esté en posición de evaluar cómo el cambio propuesto alterará los escenarios considerados en la consulta inicial y, a su vez, determine si el cambio es de tal magnitud que requiere la presentación de una nueva consulta.

Una vez la Junta de Planificación considera una solicitud para enmendar una consulta, debe emitir su decisión mediante una resolución fundamentada. Al igual que una resolución referente a la aprobación o denegatoria de una consulta, una resolución para aprobar o denegar una enmienda a ésta debe incluir las razones y los fundamentos que la sustentan para que los tribunales podamos ejercer

nuestra función revisora. No constituiría un ejercicio responsable del ejercicio de revisión judicial el afirmar que es razonable una decisión administrativa expresada en una resolución que carece de determinaciones de hecho y conclusiones de derecho que la sustenten.

En la resolución emitida por la Junta de Planificación, con relación a la cuarta enmienda a la consulta, dicha agencia expuso que, después de analizar de los argumentos de la parte proponente, consideraba razonable la petición formulada. Tras exponer lo anterior, y aclarar que su determinación estaba condicionada al ulterior cumplimiento con la reglamentación aplicable, la Junta de Planificación autorizó, sin más, la enmienda a la consulta. No surgen de la resolución mediante la cual la Junta de Planificación aprobó la cuarta enmienda las consideraciones sobre las cuales descansa la determinación administrativa. Afirmar, bajo esas circunstancias, que la determinación de la agencia es una razonable constituiría un abuso de la doctrina de deferencia judicial a las determinaciones de las agencias administrativas.[12]

Por otro lado, debo puntualizar que el expediente no incluye otros documentos relativos a la solicitud de la cuarta enmienda –además de la resolución mediante la cual

---

[12] La reverencia que la Opinión profesa a la norma de deferencia a las determinaciones administrativas, conduce a la posición mayoritaria al extremo de descansar en la afirmación de la Junta de Planificación, de que la solicitud sobre la cuarta enmienda es razonable, para sostener que la agencia no incurrió en abuso discreción en su determinación.

ésta fue aprobada– que me permitan afirmar que la Junta de Planificación tuvo ante su consideración la información suficiente, a la luz de las exigencias de la reglamentación aplicable, previo a tomar su determinación.

La Junta de Planificación es la agencia a la cual se le delegó la delicada responsabilidad de "guiar el desarrollo integral de Puerto Rico…". Artículo 4 de la Ley núm. 75 de 24 de junio de 1975, 23 L.P.R.A. sec. 62c. Es, pues, dicha agencia responsable del "desarrollo ordenado de nuestro país…". *Hatillo Cash and Carry v. A.R.P.E., supra.* Si bien, la Junta de Planificación es la agencia con el conocimiento especializado, en lo concerniente a la planificación territorial, sus determinaciones no están exentas de la revisión judicial. Debe, pues, dicha agencia emitir resoluciones razonadas y fundamentadas que nos permitan revisar que no ha abusado de su discreción en el ejercicio de la delicada labor que le ha sido encomendada. Porque considero que la resolución mediante la cual la Junta de Planificación aprobó la carta enmienda carece de determinaciones que nos permitan ejercer nuestra función revisora, disiento del resultado al cual arriba la Opinión mayoritaria.

Además, no puedo avalar el que se utilice un caso de intervención para revocar, innecesariamente, una norma relativa al concepto de parte en el proceso administrativo que ni siquiera estaba en controversia. Así la mayoría restringe y elimina vías de participación de la ciudadanía en los procesos administrativos, lo que, sin duda, tendrá

efectos nocivos en nuestra sociedad.  Disiento, en fin, porque no puedo prestar mi anuencia al curso seguido por una mayoría de los miembros de este Tribunal de cerrar puertas abiertas para una sociedad más democrática y participativa.  Esa no es la tradición de este Tribunal.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada